IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

OWNERS INSURANCE COMPANY,

     Plaintiff,

         v.

GREAT AMERICAN LAWN, LLC, et al.,

     Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-2461-TWT

## OPINION AND ORDER

This is an action for declaratory judgment. It is before the Court on a Joint Motion to Enforce Settlement [Doc. 28], Plaintiff's Motion for Summary Judgment [Doc. 29], and Plaintiff's Motion for Default Judgment [Doc. 31]. Defendant Resi Kowski has also filed Motions to Deny the Enforcement of the Settlement [Doc. 34] and to Deny Plaintiff's Motion for Summary Judgment [Doc. 35].[1] As set out below, the Joint Motion to Enforce Settlement [Doc. 28] is GRANTED; the Plaintiff's Motion for Summary Judgment [Doc. 29] is DENIED as moot; the Plaintiff's Motion for Default Judgment [Doc. 31] is GRANTED; Defendant Kowski's Motion to Deny the Enforcement of the Settlement is DENIED; and Defendant Kowski's Motion to Deny the Plaintiff's Motion for Summary Judgement is GRANTED.

---

[1] Although docketed as separate motions, these documents are simply Defendant Kowski's responses to the underlying motions.

# I.    Background

This case arises out of a claim for damages related to a motor vehicle accident that occurred on February 23, 2022. Defendant Resi Kowski filed a lawsuit in the State Court of Gwinnett County on November 4, 2022 ("underlying action"). (Compl., Doc. 1-2, Ex. B). In the underlying action, Kowski named Defendant Great America Lawn, LLC and Defendant Victor Vazemiller as defendants. Subsequently, Plaintiff Owners Insurance Company filed the present action seeking a judicial declaration of noncoverage pursuant to the policy terms. (Compl. ¶¶ 28-52). Pending the adjudication of this case, the underlying action has been stayed. (Joint Br. in Supp. of Mot. to Enforce Settlement, at 2). Defendants Kowski, Vazemiller, and Great American Lawn have filed answers to the Complaint. (Kowski Answer, Doc. 12; Vazemiller & Great American Lawn Answer, Doc. 14). However, Defendant LM General Insurance Company ("LM General") has not filed an answer and is now in default. (Doc. 19).

Since the Defendants filed their Answers, Owners, Kowski, Vazemiller, and Great American Lawn have entered into settlement discussions. Owners, Vazemiller, and Great American Lawn assert that a settlement has been reached and now move to enforce that settlement. Owners also moves for default judgment as to LM General and moves for summary judgment. Kowski opposes both the Motion to Enforce Settlement and the Motion for Summary

Judgment, and LM General has not filed a response to the Motion for Default Judgment.

## II.     Legal Standard

The Court uses "the applicable state's contract law to construe and enforce settlement agreements." *Vinnett v. Gen. Elec. Co.*, 271 F. App'x 908, 912 (11th Cir. 2008) (citation omitted). It is undisputed that Georgia law governs this case. "Under Georgia law, a motion to enforce a settlement agreement is evaluated under the standards similar to a motion for summary judgment." *Cohen v. DeKalb Cnty. School Dist.*, 2009 WL 4261161, at *4 (N.D. Ga. Nov. 25, 2009) (citation omitted). Thus, "[t]he moving party bears the burden of showing the absence of a genuine issue of material fact, and the Court must draw all disputed factual inferences in the light most favorable to the non-moving party." *Brennan v. Summer WWK LLC*, 2022 WL 20303486, at *2 (N.D. Ga. Dec. 12, 2022) (alteration, quotation marks, and citation omitted). "To prevail, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case." *Ballard v. Williams*, 223 Ga. App. 1, 1 (1996) (quotation marks and citation omitted).

### III.   Discussion

#### A. Settlement

Owners, Great American Lawn, and Vazemiller argue that they settled this case with Kowski on October 26, 2023, and they now jointly move to enforce that settlement. (Joint Br. in Supp. of Mot. to Enforce Settlement, at 1). Kowski opposes this motion and asserts that this case was never settled since there was no meeting of the minds. (Kowski's Br. in Opp'n to Mot. to Enforce Settlement, at 1). Moreover, if the Court finds that a settlement has taken place, Kowski contends that it should include a limited liability release ("LLR") rather than a general release. (*Id.* at 7). Even viewing the facts in the light most favorable to Kowski, the Court finds that there was a meeting of the minds and enforces the settlement with a general release.

"The law favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." *Newton v. Ragland*, 325 Ga. App. 371, 373 (2013) (alterations and citation omitted). Even so, under Georgia law,

> an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract. In this regard, it is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense.

*Funna v. Sage Software Inc.*, 2019 WL 13211058, at *2 (N.D. Ga. Dec 11, 2019) (citation omitted). In determining whether there was a meeting of the minds,

courts apply an objective theory of intent. *Hansen v. Doan*, 320 Ga. App. 609, 612-13 (2013). Accordingly, "one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent." *Id.* (citation omitted). "Assent to the terms of the agreement can be implied from the circumstances, and conduct inconsistent with a refusal of the terms raises a presumption of assent upon which the other party can rely. An attorney's consent to the agreement is binding on his client." *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985) (citations omitted).

With this law in mind, the Court considers the settlement discussion in this case. The moving parties have provided emails between Owners's counsel and Kowski's counsel. (Joint Br. in Supp. of Mot. to Enforce Settlement, Doc. 28-4, Ex. C). In those emails, Owners's counsel asks whether Kowski's counsel had a chance to discuss a potential settlement with his client. (*Id.* at 3). Kowski's counsel responded stating, "We wanted to counter at $10,000.00. Please let me know if you have any room to move." (*Id.* at 2). Owners's counsel answered:

> Thanks Shaun. Owners Insurance Company and Mr. Vazemiller will each contribute $5,000 in order to achieve a $10,000 aggregate settlement.
>
> I'll prepare a draft Settlement Agreement and circulate it in the coming days. With the MSJ/PTO deadline coming up in late November, I'd also like to file a Notice of Settlement with the Court. Please let me know if that's agreeable.

(*Id.*). In reply, Kowski's counsel said, "Thank you for working towards a resolution. I am agreeable to the notice of settlement." (*Id.* at 1).

Even though the parties agreed to a total settlement amount, confirmed who would pay what portion of that amount, and arranged that Owners's counsel would notify the Court that a settlement has been reached, Kowski asserts that there was not a settlement. Kowski argues that "[b]ecause Plaintiff is not providing the requested limited liability release, or unable to agree on a release, there is no meeting of the minds." (Kowski's Br. in Opp'n to Mot. to Enforce Settlement, at 6). In support of that argument, Kowski points to emails showing an earlier settlement discussion, an email from Owners's counsel stating he was unaware of those earlier emails, and telephone conversations among counsel in which Kowski's counsel said Kowski would not accept any settlement that could potentially prevent the underlying action from proceeding. (*Id.* at 3-4, 6-7). The Court finds Kowski's argument unpersuasive.

Starting with the earlier settlement discussion, those emails were between Kowski's counsel and Vazemiller's counsel who represents him in the underlying action but not this case. (Kowski's Br. in Opp'n to Mot. to Enforce Settlement, Doc. 34-2, Ex. A; Reply Br. in Supp. of Mot. to Enforce Settlement, Doc. 36-1, Ex. A). Kowski's counsel asks for $15,000 in exchange for an LLR. (Kowski's Br. in Opp'n to Mot. to Enforce Settlement, Doc. 34-2, Ex. A at 3).

After receiving the executed form, Vazemiller's counsel states, "Thanks. I am working on securing some authority for Mr. Vazemiller as we discussed, but I do not have it yet." (*Id.*, Ex. A at 1). No further emails in this exchange have been provided to the Court.

Kowski does not argue that this in itself was an agreement between the parties. Rather—as best as the Court can discern from the briefing—Kowski's position is that this email exchange shows that Kowski wanted an LLR and that any future agreement either included an LLR implicitly or was not enforceable without a discussion of what type of release is included. (*Id.* at 5-7). However, the later emails between Owners's counsel and Kowski's counsel belie any contention that the parties understood the $10,000 settlement to include an LLR. In an email sent after Kowski's counsel already agreed that the notice of settlement should be filed, he asked, "For this dismissal, would Auto Owners be able to provide a limited liability release? I am trying to think if it is necessary." (Joint Br. in Supp. of Mot. to Enforce Settlement, Doc. 28-4, Ex. C at 1). The fact that Kowski's counsel was asking for an LLR after agreeing to the $10,000 amount shows that he did not believe the LLR was already included. Moreover, it is undisputed that when the $10,000 offer was agreed upon, Owners's counsel was unaware of the earlier settlement discussions with Vazemiller's counsel for the underlying action. (Kowski's Br. in Opp'n to Mot. to Enforce Settlement, at 6, Ex. C at 3-4). Thus, any suggestion

7

that there was a meeting of the minds to include an LLR is without merit.

The question then becomes whether the lack of discussion about what type of release would be included prevented there from being a meeting of the minds. It does not. In *Wong*, 752 F.2d at 620, a plaintiff filed suit for damages suffered when the vehicle she was riding in was struck by another vehicle. The insurance company for the vehicle that caused her injuries offered $15,000 to settle the suit, and the plaintiff orally agreed. *Id.* The insurance company then sent her a draft of a settlement agreement that included a general release clause. *Id.* The plaintiff rejected the draft because the general release did not ensure that her claim to underinsurance benefits from a different insurer would be preserved. *Id.* When the parties could not agree on whether to include the general release clause, the plaintiff said that she could not consummate the settlement. *Id.* Opposing counsel moved to enforce settlement. *Id.* The district court granted the motion, and the Eleventh Circuit affirmed. *Id.* at 621. The Eleventh Circuit held that "counsel for both parties understood that the Baileys' attorney would follow the standard procedure used in settling personal injury actions, incorporating therein a general release clause." *Id.* (citation omitted). "Counsel's assent to the inclusion of a general release could be implied from his failure to object when he agreed to settle the case." *Id.* (citation omitted).

Despite the great factual similarities between the present case and *Wong*, Kowski does not even cite to this case in the Response. The only fact that Kowski raises that could distinguish the two is that "[h]ere,…a limited liability release was requested and therefore is a material term of any settlement acceptance." (Kowski's Br. in Opp'n to Mot. to Enforce Settlement, at 6). It is unclear from the brief at what point Kowski assertedly requested an LLR. If Kowski is referencing the earlier emails in which Kowski asked for a $15,000 settlement and an LLR, that request occurred in a separate settlement discussion with separate counsel in a separate (albeit closely related) case. Kowski provides no authority or reasoning to support the proposition that requesting an LLR in settlement discussions in one case to one attorney renders that condition a material term in another case where the party never raises the issue. Furthermore, it is undisputed that Owners's counsel was unaware of those discussions at the time the parties agreed to the $10,000 settlement. Consequently, Owners's counsel had no reason to think Kowski would seek to stray from "the standard procedure used in settling personal injury actions, incorporating therein a general release clause." *Wong*, 752 F.2d at 621.

If, on the other hand, Kowski is asserting that the phone conversations among counsel involved requests for an LLR, it is likewise lacking. Kowski states that "[t]he undersigned also had telephone conversations with counsel

9

Kershaw that under no circumstances would Defendant Kowski accept any settlement that would potentially keep her from proceeding with the underlying action." (Kowski's Br. in Opp'n to Mot. to Dismiss, at 3-4). However, much like in *Wong*, this dispute came only after the parties agreed to a settlement, and Kowski "has cited no case in support of its argument that we should look to a party's subsequent conduct in determining whether it entered into a valid contract." *DeRossett Enters., Inc. v. Gen. Elec. Cap. Corp.*, 275 Ga. App. 728, 730 (2005).

Ultimately, under Georgia law, "it is well settled that the mere inclusion of a release form unacceptable to the plaintiff does not alter the fact that a meeting of the minds had occurred with regard to the terms of the settlement." *Turner v. Williamson*, 321 Ga. App. 209, 213 (2013) (compiling cases). Because the only issue here is that the release form is unacceptable to Kowski, the Court finds that the "parties have entered into a definite, certain, and unambiguous agreement to settle." *Landberg v. Universal Trailer Corp. Horse/Livestock Grp.*, 2008 WL 11334448, at *2 (N.D. Ga. Sept. 3, 2008) (citation omitted). Since there is no genuine issue of material fact, the Court grants the Joint Motion to Enforce the Settlement [Doc. 28].[2]

---

[2] Granting the Joint Motion to Enforce Settlement moots the Plaintiff's Motion for Summary Judgment [Doc. 29]. *See Yunker v. Allianceone Receivables Mgmt., Inc.*, 701 F.3d 369, 372 (11th Cir. 2012) ("As a general principle, settlement between the parties in litigation renders the case moot." (citations omitted)). The only exception that could apply is that other issues in

### B. Default Judgment

Next, the Court addresses Owners's Motion for Default Judgment [Doc. 31] against LM General.[3] When a party fails to plead or defend against a plaintiff's complaint for affirmative relief, the clerk must enter the party's default. Fed. R. Civ. P. 55(a). A default constitutes admission of all well-pleaded factual allegations contained in the complaint. *Nishimatsu Constr. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[4] A party may then move for default judgment, but a grant of default judgment in favor of the plaintiff is warranted only if there exists "a sufficient basis in the pleadings for the judgment entered." *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011) (quoting *Nishimatsu Constr.*, 515 F.2d at 1206). In addition to the pleadings, a court considering a motion for default judgment may also rely on evidence such as affidavits and declarations. *Id.* "The notice and hearing provisions of Rule 55 are not applicable where a party has not

---

the case have not become moot. However, as described below, the Motion for Default Judgment [Doc. 31] is concurrently granted. Consequently, there are no more issues in this case. The Court thus denies the Plaintiff's Motion for Summary Judgment as moot and does not reach the issues raised therein.

[3] LM General was not a part of the settlement discussion, and no part of the agreement purports to bind LM General. Because of that, enforcing the settlement does not end the case as it relates to LM General, and the Court proceeds to the Motion for Default.

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

made an appearance." *Am. Gen. Life Ins. Co. v. Margolis Family I, LLC*, 2008 WL 857436, at *16 (N.D. Ga. March 28, 2008) (citation omitted).

Here, LM General has failed to answer the Complaint, file any pre-answer motions, respond to any of the present motions, move to set aside default, or otherwise appear before the Court. Since LM General is in default, all of the well-pleaded allegations of the Complaint are deemed admitted. The only question, therefore, is whether those allegations provide a sufficient basis for judgment to be entered.

The Complaint alleges that the Automobile Liability Policy only provides coverage to a vehicle owned by Vazemiller if Vazemiller identified the vehicle in the Declarations. (Compl. ¶ 29, Ex. C at 17-18). Vazemiller owned the GMC Sierra that was involved in the accident, but Vazemiller did not identify it on the Policy's Declarations. (*Id.* ¶¶ 30-31, Ex. C at 10-13). Moreover, the Umbrella Policy excludes from coverage "[p]ersonal injury or property damage resulting from…business pursuits or business property," unless *inter alia* the injury or damage was "caused by private passenger automobiles not used" for certain purposes. (*Id.* ¶¶ 34-35, Ex. D at 19). Vazemiller owned the Sierra in connection with his business, using it to haul lawn equipment and supplies. (*Id.* ¶ 36). At the time of the accident, Vazemiller was driving to Lowe's while hauling pine straw and a lawn mower to purchase items in connection with his business. (*Id.* ¶ 37). Accordingly, Owners alleges that the

injuries resulted from "business pursuits or business property" and that the Sierra does not qualify as a "private passenger automobile." (*Id.* ¶¶ 38-39).

Taking these allegations as true, there is "a sufficient basis in the pleadings for the judgment entered" both because the Sierra was being used for business purposes and because it was not listed on the Policy's Declarations. *Frazier*, 767 F. Supp. 2d at 1362 (citation omitted). The Court will therefore grant default judgment against LM General.

## IV.   Conclusion

For the reasons stated above, the Joint Motion to Enforce Settlement [Doc. 28] is GRANTED; the Plaintiff's Motion for Summary Judgment [Doc. 29] is DENIED as moot; the Plaintiff's Motion for Default Judgment [Doc. 31] is GRANTED; Defendant Kowski's Motion to Deny the Enforcement of the Settlement is DENIED; and Defendant Kowski's Motion to Deny the Plaintiff's Motion for Summary Judgement is GRANTED. The Clerk is DIRECTED to enter judgment by default in favor of the Plaintiff as to Defendant LM General and to close the case.

SO ORDERED, this ____18th____ day of March, 2024.


THOMAS W. THRASH, JR.
United States District Judge

13